UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRIAN CALISE,

                                    Plaintiff,

                    -v-

CASA REDIMIX CONCRETE CORP.,

                                    Defendant.

---

20 Civ. 7164 (PAE)

OPINION &
ORDER

PAUL A. ENGELMAYER, District Judge:

        This is a discrimination and retaliation case brought by a cement truck driver.  Brian

Calise, who worked for defendant Casa Redimix Concrete Corporation ("Casa") from March

2017 until July 9, 2019, alleges that he was discriminated and retaliated against because of his

disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the

"ADA"), New York State Human Rights Law, New York Exec. Law § 290 *et seq.* ("NYSHRL"),

and New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.* ("NYCHRL"), and

that Casa interfered with his family leave, in violation of the Family Medical Leave Act, 29

U.S.C. § 2601 *et seq.* ("FMLA").

        Pending now is Casa's motion to dismiss certain claims pursuant to Federal Rule of Civil

Procedure 12(b)(6)—specifically, Calise's post-employment ADA, NYSHRL, and NYCHRL

retaliation claims.  For the following reasons, the Court denies Casa's motion.

## I.      Background

### A.      Factual Background[1]

#### 1.      The Parties

Calise, a resident of Staten Island, New York, started driving cement trucks for Casa in March 2017. AC ¶ 10. He has experienced opioid addiction, and takes suboxone, a prescription drug "designed to act as a pain killer and to wean a patient off opioids," or to "act as a much more functional pain killer" and alleviate withdrawal symptoms from opioids. *Id.* ¶¶ 3, 12, 14.

Casa is a company based in New York with at least 15 employees. Its principal place of business is at 886 Edgewater Road, Bronx, New York (the "Facility"). *Id.* ¶ 4.

#### 2.      Calise's Use of Suboxone

Calise began taking suboxone after developing an opioid addiction after "smashing his hand in a car accident" in 2014. *Id.* ¶ 14. In December 2017, while working for Casa, he was further injured in a way that "caused severe and unremitting pain, necessitating both shoulder and neck fusion surgery." *Id.* The AC alleges that whenever Calise injected suboxone, a notification was sent to Casa, so that Casa was "well aware" that he used suboxone. *Id.* ¶ 15.

#### 3.      The Accident

On July 9, 2019, Calise was responsible for maneuvering the cement truck he drove for Casa, a "difficult task." *Id.* ¶ 10. He was accused that day of having been involved, while driving the truck, in a "slight accident" with a parked car at the Facility. *Id.* The AC alleges that

---

[1] These facts are drawn from the second Amended Complaint, titled "Amended Complaint," Dkt. 34 ("AC"), and documents it incorporates by reference. *See Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003) ("To be incorporated by reference the Complaint must make a clear, definite, and substantial reference to the documents."). This includes the full August 31, 2019 letter to which the AC refers, *see* AC ¶ 16; Dkt. 35-2 ("Ltr."). For the purpose of resolving the motion to dismiss, the Court assumes all well-pled facts to be true and draws all reasonable inferences in favor of the plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Calise did not know about the claim of this accident until Casa told him about it, and that there was no police report about the accident, injuries to any person, or damage to the truck. *Id.*

### 4. Calise's Termination

On July 9, 2019, the same day as the alleged accident, Calise was ordered by Casa to produce his prescription drug records from CVS Pharmacy; he did so. *Id.* ¶ 11. The records showed that Calise was taking suboxone. *See id.* ¶ 12. After receiving the records, three people "met to discuss [Calise's] fate": "Will, the safety manager"; "Joe," the local union's shop steward, and Mauro Perciballi, Casa's President. Joe then called Calise and fired him. *Id.* ¶ 11.

The AC alleges that Calise was fired because "it was 'discovered'" that Calise was taking suboxone, even though Casa already knew of his suboxone use. *Id.* ¶¶ 12, 15. Otherwise, the AC alleges, Calise was good at his job and had a good track record working for Casa. *Id.* ¶ 10.[2]

### 5. Events Following Calise's Termination

On July 10 and July 17, 2019,[3] after the accident and his termination, Calise was given two drug tests; he tested negative on both "for any prescription medications, including suboxone." *Id.* ¶ 13 (emphasis omitted). On July 19, 2019, Calise was "cleared to drive by Dr. Dominic Pompa." *Id.*

On August 1, 2019, Calise alleged disability discrimination in a letter, apparently sent to Casa's counsel. *See id.* ¶ 44; *see also* Ltr. He also alleged such discrimination in a charge to the Equal Employment Opportunity Commission ("EEOC"). AC ¶ 44. On August 30, 2019, Calise

---

[2] The AC also alleges that, by terminating Casa a couple of months before his wife was due to have a baby (on September 9, 2019), Casa interfered with Calise's ability to take FMLA leave. AC ¶¶ 37–39.

[3] The AC reports these dates as "on or about . . . July 9 (the day after the accident) and July 17." AC ¶ 13. The Court construes the AC to claim that one test was taken on July 10, 2019, the day after the accident. *But see* Ltr. (describing date of accident as July 8, 2019).

alleges, he was sent a letter by or "on behalf of" Casa, "threatening to hold [Calise] 'directly financially responsible'" if he sued Casa. *Id.* ¶ 16.  The letter closed by stating:

> If suit is filed, Casa Redimix intends to vigorously defend against the frivolous claims and will seek to hold Mr. Calise and your firm directly financially responsible for its attorneys' fees and costs in defending against his claims.  Please be guided accordingly.

*Id.* (emphasis omitted).

After Casa fired Calise, he applied to other positions as a cement truck driver. *Id.* ¶ 17. In August 2019, he applied to Tec Crete Ready Mix LLC ("Tec Crete").  There, he was told by Mike Nucci and an unidentified "older . . . gentleman" that he would not be hired because they would face "repercussions" from Casa president Perciballi. *Id.* ¶ 18.  When Calise asked "what Perciballi had to do" with his job application, Nucci responded that "we are all connected in some way," and stated that Casa had called Tec Crete and asked the company not to hire Calise. *Id.*

Calise also applied to work for City Ready Mix Corporation ("City").  There, "Jazz," a dispatcher, told Calise that Will—the safety manager at Casa—had told Jazz that Perciballi had spoken to City's owner, who was also a relative of Perciballi's, and that their conversation "caused City not to hire" Calise. *Id.* ¶ 20.  As a result, Calise "was not welcome there no matter how busy City was." *Id.*

The AC alleges that these episodes reveal that Perciballi intervened to prevent Calise from getting a job, "in retaliation for seeking redress for his discrimination claim," *id.* ¶¶ 19, 21, and "constitute a pattern of concerted activity designed to retaliate against [Calise] by discouraging him from filing suit and by attempting to deny him the right to work in his chosen occupation." *Id.* ¶ 22.

### B.    Procedural History

On September 2, 2020, Calise filed the original Complaint. Dkt. 1. On November 13, 2020, Casa answered. Dkt. 10. On March 26, 2021, the Honorable Alison J. Nathan, United States District Judge, issued a civil case management plan and scheduling order. Dkt. 19. On May 7, 2021, Calise filed a motion to amend or correct the complaint. Dkts. 22–24; *see* Dkt. 23-3. On May 12, 2021, Judge Nathan granted the motion. Dkt. 25.[4] On July 6, 2021, Casa filed a motion to dismiss and supporting submissions. Dkt. 28. On July 15, 2021, Judge Nathan ordered Calise to amend his complaint or oppose the motion to dismiss. Dkt. 30.

On July 21, 2021, Calise filed the operative amended complaint. It brings disability discrimination and post-employment retaliation claims under each of the ADA, NYSHRL, and NYCHRL, and a claim for violating the FMLA. Dkt. 33; *see* Dkt. 34 ("AC") (corrected filing). On August 4, 2021, Casa filed the instant partial motion to dismiss, Dkt. 35, a brief in support, Dkt. 35-1 ("Def. Mem."), and the certification of Sandra T. Jimenez, Dkt. 35-2 ("Jimenez Decl."). On August 18, 2021, Calise filed a memorandum of law in opposition to the motion. Dkt. 37 ("Pl. Opp'n"). On August 25, 2021, Casa filed a reply. Dkt. 39 ("Reply"). On December 10, 2021, the action was reassigned to this Court.

## II.    Applicable Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). By contrast, a complaint will

---

[4] This complaint was served but never filed on the docket of this case. *See* Def. Mem. at 1; Dkts. 23-3, 33, 34.

not "suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and alterations omitted). Such factual enhancement is necessary to "nudge[] [a] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Although this standard "does not impose a probability requirement at the pleading stage," it does require a complaint to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support plaintiff's claims. *Id.* at 556. Where a complaint fails to do so, "[t]his basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (ellipsis omitted) (quoting 5 Wright & Miller, Federal Practice and Procedure § 1216). Otherwise, "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings." *Id.* at 559. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the [Court] to draw on its judicial experience and common sense. But where the well-pled facts do not permit inferring more than the mere possibility of misconduct," the complaint has not shown an entitlement to relief and must be dismissed. *Iqbal*, 556 U.S. at 679 (citation omitted). Although the Court must accept as true all well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor, *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014), that tenet "is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678.

**III.    Discussion**

Casa's motion to dismiss takes aim only at Calise's post-employment retaliation claims, and at these only insofar as they are based on the August 30, 2019 letter from Casa's counsel that Calise terms "threatening." Casa argues, first, that the letter is inadmissible under Federal Rule of Evidence 408, and second, that, as a matter of law, the letter was not an adverse employment action and thus cannot constitute a retaliatory act. The Court reviews each argument in turn.

### A.    Federal Rule of Evidence 408

Casa argues that the letter was "a statement made during compromise negotiations," Fed. R. Evid. 408, and is therefore inadmissible and thus that a retaliation claim based on it must fail, Def. Mem. at 7–8.  Calise counters that (1) no part of the letter, including the portion quoted in the AC, concerns actual settlement negotiations; (2) correspondence subject to Rule 408 can be used to establish retaliation; and (3) the Court should not decide a motion to dismiss based on an evidentiary ruling.  Pl. Opp'n at 7–8.  Calise is correct that a motion to dismiss claims based on such evidence cannot properly be granted at this early stage.

To begin, it is premature to resolve the admissibility of the letter.  There are substantial questions whether the letter qualifies as a settlement communication under Rule 408.  Although the letter bears a header to that effect, its content lacks an offer to settle and is silent as to settlement terms.  Close review of the letter, viewed in the light of surrounding events, would be necessary to judge whether any or all of the letter so qualified.  More broadly, it is inappropriate at such an early stage to resolve questions of admissibility.  "The fact that a pleading contains references to documents that may eventually be ruled inadmissible in evidence is not a proper basis for dismissal pursuant to Rule 12(b)(6)."  *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).  Rather, the admissibility of a document is "properly . . . considered in the context of a motion for summary judgment."  *Id.* at 124; *see also, e.g.*, *Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 540 (S.D.N.Y. 2016) (rejecting argument that retaliation claim must be dismissed because evidence was allegedly inadmissible under Rule 408 in light of the fact that "the admissibility of documents incorporated in the complaint is irrelevant at the dismissal stage") (quoting *New Yuen Fat Garments Factory Ltd. v. August Silk, Inc.*, No. 07 Civ. 8304 (JFK), 2009 WL 1515696, at *5 (S.D.N.Y. June 1, 2009)).

The cases cited by Casa are far afield. *Eviner v. Eng*, No. 13 Civ. 6940, 2015 WL 4600541 (E.D.N.Y. July 29, 2015), resolved the admissibility of voicemail transcripts—on a motion for summary judgment. *Id.* at *6–7. *E.E.O.C. v. Gear Petroleum, Inc.*, 948 F.2d 1542 (10th Cir. 1991), had advanced even further; the court of appeals there reviewed, under an abuse of discretion standard, the district court's resolution of a motion *in limine* to exclude evidence under Rule 408. *Id.* at 1543, 1545–46.

In any event, even if the letter were held subject to Rule 408, that would not prevent it from receipt at trial as a basis for a retaliation claim. "Although settlement statements are inadmissible to prove liability or amount, they are admissible when the evidence is offered for another purpose." *Cerni*, 208 F. Supp. 3d at 540 (citing Fed. R. Evid. 408; *Pace v. Paris Maint. Co.*, 7 F. App'x 94 (2d Cir. 2001) (summary order)); *see Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989) ("Evidence of an offer to compromise, though otherwise barred by Rule 408, can fall outside the Rule if it is offered for 'another purpose,' *i.e.*, for a purpose other than to prove or disprove the validity of the claims that the offers were meant to settle.") (citation omitted). Rule 408 explicitly says this. Although an offer to settle or a statement made during settlement is inadmissible "either to prove or disprove the validity or amount of a disputed claim or to impeach," "[t]he court may admit this evidence for another purpose."

Here, Calise's AC alleges that the letter was deployed by Casa for another purpose—a retaliatory purpose—as a threat that formed part of a series of retaliatory acts by Casa. *See* AC ¶ 16. If offered for that purpose, the letter would not be barred by Rule 408. *See Pace*, 7 F. App'x at 97 (statement made during settlement negotiations may have been offered "to demonstrate . . . act of retaliation for the filing of the instant lawsuit" if plaintiff had established discriminatory

animus) (citing Fed. R. Evid. 408 and collecting cases); *Cerni*, 208 F. Supp. 3d at 540–41

(collecting cases). "Rule 408 only bars the use of compromise evidence to prove the validity or

invalidity of the claim that was the subject of the compromise, not some other claim." *Williams*

*v. Regus Mgmt. Grp., LLC*, No. 10 Civ. 8987 (JMF), 2012 WL 1890384, at *3 (S.D.N.Y. May

15, 2012) (quoting *Uforma/Shelby Bus. Forms, Inc. v. NLRB*, 111 F.3d 1284, 1293–94 (6th Cir.

1997) and collecting cases); *id.* at *4 (plaintiff could offer evidence relating to potential

settlement of race discrimination claims "to establish that he engaged in a protected activity

known to the defendant, which is an element of his *retaliation* claim") (emphasis in original); *see*

*also Carney v. Am. Univ.*, 151 F.3d 1090, 1095 (D.C. Cir. 1998) ("[S]uch correspondence can be

used to establish an independent violation (here, retaliation) unrelated to the underlying claim

which was the subject of the correspondence (race discrimination)."); *Carr v. Health Ins. Plan of*

*Greater New York, Inc.*, No. 99 Civ. 3706 (NRB), 2001 WL 563722, at *4 (S.D.N.Y. May 24,

2001).

To the extent Casa's motion to dismiss is based on the argument that Rule 408 would

necessarily preclude use of its letter at trial, that motion lacks merit.[5]

### B.    Retaliation Claims Arising From the Letter

Casa next argues that the letter did not "constitute a retaliatory act" and, relatedly, that, as

a post-termination event, it could not have qualified as an adverse employment action capable of

---

[5] The same outcome would apply if Casa's motion were treated as one under Federal Rule of
Civil Procedure 12(f) to strike the allegations regarding the letter. *See* Reply at 1, 5. There is no
basis to strike these allegations, which plausibly plead that Casa used the letter as part of a
retaliatory campaign. *See Holland v. Chase Bank USA, N.A.*, 475 F. Supp. 3d 272, 275
(S.D.N.Y. 2020) ("[M]otions to strike under Rule 12(f) are generally disfavored and granted only
if there is strong reason to do so.") (internal quotation marks omitted); *Lipsky v. Commonwealth
United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (on motion to strike,"[e]videntiary questions . . .
should especially be avoided at such a preliminary stage of the proceedings"); *Westwide Winery,
Inc. v. SMT Acquisitions, LLC*, 511 F. Supp. 3d 256, 265 (E.D.N.Y. 2021) (denying motion to
strike claims based on Rule 408 evidence at pleading stage).

supporting retaliation claims under the ADA and NYSHRL. Def. Mem. at 8–9. Calise responds that, in the AC, the letter is not a freestanding basis for a retaliation claim, but is instead alleged to be part of a set of steps—including Perciballi's serial blackballing of him—that constituted unlawful retaliation. Pl. Opp'n at 9–10. Calise is, again, correct.

### 1.    Applicable Law

To allege a *prima facie* case of retaliation under the ADA and the NYSHRL, a plaintiff must allege that: "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006) (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)); *see Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999) (Title VII retaliation test applies to ADA claims); *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (Title VII and NYSHRL retaliation test are the same).

"[T]he NYCHRL's definition of retaliation is broader" than that of federal law or the NYSHRL. *See Dodd v. City Univ. of New York*, 489 F. Supp. 3d 219, 268 (S.D.N.Y. 2020). "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (citation omitted); *see also, e.g., Kia Song Tang v. Glocap Search LLC*, No. 14 Civ. 1108 (JMF), 2015 WL 1344788, at *5 (S.D.N.Y. Mar. 24, 2015). The NYCHRL therefore does not "requir[e] a plaintiff to show an adverse employment action." *See Xiang v. Eagle Enters., LLC*, No. 19 Civ. 1752 (PAE), 2020 WL 248941, at *8 (S.D.N.Y. Jan. 16, 2020) (quoting *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 362 (S.D.N.Y. 2012)).

2.     **Analysis**

For the reasons that follow, the Court holds that the AC pleads retaliation claims under all three statutes.  The Court accordingly analyzes it under the more demanding standard: that of the ADA and NYSHRL.  Of central importance, the retaliation claims are not based exclusively on the letter.  Instead, they plead a series of acts constituting retaliation, including, dramatically, Casa's serial attempts to blackball Calise with other employers—attempts which, as alleged, began soon after Calise sent Casa a letter complaining of discrimination and "seeking redress." *See* AC ¶¶ 19, 21–22, 42–44, 47.  Calise's attempt to cast the AC's retaliation claims as based solely on the August 31, 2019 letter misreads the AC.

Viewing the AC holistically, it clearly alleges the first two elements of a *prima facie* retaliation claim.  As to the first element, on August 1, 2019, Calise "alleged disability discrimination" in a letter to Casa from his counsel. *See id.* ¶ 44.  This letter is fairly pled to have been a pre-lawsuit demand letter, and as such, a protected activity that may form the basis for a retaliation claim. *See Mondschein v. NY 101, Inc.*, No. 18 Civ. 5607, 2020 WL 1275471, at *3 (E.D.N.Y. Mar. 17, 2020) (pre-suit demand letter is protected activity); *Bethea v. JP Morgan Chase & Co.*, No. 15 Civ. 3544, 2019 WL 4805141, at *12 (E.D.N.Y. Sept. 30, 2019) (same). Indeed, the August 31, 2019 letter, which the AC incorporates by reference, describes the August 1, 2019 letter as a "demand letter." *See* Ltr.  And as to the second element, Casa's counsel's August 31, 2019 response reflects that Casa was aware of that protected activity. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) ("a plaintiff may rely on 'general corporate knowledge' of her protected activity to establish the knowledge prong of the *prima facie* case") (citation omitted); *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 585 (S.D.N.Y. 2012) ("Knowledge of professionals within the institution tasked with investigating and evaluating claims of discrimination, even if such individuals do not influence the decisionmaker, is

11

sufficient to show general corporate knowledge.") (citing *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006)), *aff'd*, 526 F. App'x 124 (2d Cir. 2013) (summary order).[6]

The AC also pleads the latter two elements of an ADA and NYSHRL retaliation claim—an adverse employment action and a basis to infer a causal connection between that action and the plaintiff's protected activity. As courts in this Circuit have recognized, blacklisting, or interfering with future employment opportunities, can constitute an adverse employment action. *See, e.g.*, *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) (internal citation omitted) (citing *Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir. 1979), *rev'd on other grounds*, 447 U.S. 807 (1980); *Pantchenko v. C.B. Dolge Co., Inc.*, 581 F.2d 1052, 1054–55 (2d Cir. 1978)) (in ADEA context, "plaintiffs may be able to state a claim for retaliation . . . if, for example, the company 'blacklists' the former employee, wrongfully refuses to write a recommendation to prospective employers, or sullies the plaintiff's reputation"); *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 448 (S.D.N.Y. 2018) ("The ability to 'blacklist' a former employee, and thus foreclose future employment possibilities, is but one example of an employer's power to punish a former employee[.]") (quoting *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 890 (7th Cir. 1996)); *Shakerdge v. Tradition Fin. Servs., Inc.*, No. 16 Civ. 01940, 2017 WL 4273292, at *5 (D. Conn. Sept. 26, 2017) ("[A] negative reference or similar actions taken with respect to a new prospective employer can be considered an adverse action and therefore provide support for a retaliation claim.") (collecting cases). Here, the AC

---

[6] The AC separately alleges that Calise filed an EEOC charge, although it does not state when it was filed. AC ¶ 44; *see* Dkt. 33-1 (EEOC Notice of Right to Sue). The filing of an EEOC charge is a separate protected activity. *See, e.g.*, *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001), *as amended* (June 6, 2001); *Meyers v. Medco Health Sols., Inc.*, No. 09 Civ. 09216 (RKE), 2015 WL 1500217, at *12 (S.D.N.Y. Mar. 31, 2015) (collecting cases).

alleges that Perciballi told two cement truck companies not to hire Calise, and each conveyed this to Calise, attributing their refusal to Perciballi and Casa; that Nucci, of Tec Crete, conveyed a threat of sorts as to Calise's employment prospects ("we are all connected in some way"); and that a City employee told Calise it would never hire him, no matter its circumstances, because of Perciballi's intervention. AC ¶¶ 18–21. These allegations plead an adverse employment action.

As to causation, the AC pleads this element by means of temporal proximity as to at least one episode of retaliatory blacklisting.[7] It alleges that Calise wrote Casa on August 1, 2019, claiming discrimination, and that Calise applied to work for Tec Crete in August 2019 and was promptly turned away, at the alleged behest of Casa president Perciballi. Ltr. at 1; AC ¶¶ 18, 44. Because there was, at most, about a one-month gap between the protected activity and the adverse action, an inference of causation arises. *See Treglia*, 313 F.3d at 720 ("[C]lose temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation."); *id.* at 721 (protected activity in February 1998 and alleged adverse employment action in March 1998 "sufficient to establish the required causal link for a *prima facie* case") (citing *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 435 (2d Cir. 1999)); *see also, e.g., White v. Dep't of Corr. Servs.*, 814 F. Supp. 2d 374, 390 (S.D.N.Y. 2011) (one month between protected activity and retaliation sufficient to withstand summary judgment) (citing *Scheiner v. N.Y.C. Health & Hosps.*, 152 F. Supp. 2d 487, 497 (S.D.N.Y. 2001) (holding same)); *Joseph v. Owens & Minor Distribution, Inc.*, 5 F. Supp. 3d 295, 319 (E.D.N.Y. 2014) (holding same), *aff'd*, 594 F. App'x 29 (2d Cir. 2015) (summary order); *Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 417 (S.D.N.Y. 2006) (temporal proximity

---

[7] The AC does not allege when Calise applied to work for City. *See* AC ¶ 20.

of just over one month is "arguably 'very close'") (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

Drawing all reasonable inferences in favor of the AC, it pleads a viable retaliation claim under the ADA and NYSHRL, and as such, necessarily pleads a viable such claim under the NYCHRL. *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009); *Limauro v. Consol. Edison Co. of New York, Inc.*, No. 20 Civ. 3558 (CM), 2021 WL 466952, at *4 (S.D.N.Y. Feb. 9, 2021) (comparing ADA, NYSHRL, and NYCHRL, and stating "because the NYCHRL is more protective than its state and federal counterparts, a claim is automatically stated under the NYCHRL if it is stated under the federal and state statutes").

## CONCLUSION

For the foregoing reasons, the Court denies Casa's partial motion to dismiss. The Clerk of the Court is respectfully directed to close the motions pending at dockets 28 and 35.

This case will now move briskly forward. A case management order will issue shortly scheduling an initial pretrial conference and directing counsel, in advance, to submit an amended proposed case management plan.

SO ORDERED.

*Paul A. Engelmayer*

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: February 4, 2022
       New York, New York

14